IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUHA S. HOSSAIN,<br><br>Plaintiff,<br>v.<br><br>BMO Bank, N.A.,<br><br>Defendant. | )<br>)<br>)<br>)<br>) Case Number:<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

Plaintiff, a highly experienced female banking professional, and her all-female team were subjected to ongoing harassment and intimidation by male employees, including Premier Banker Eric Boutella and his direct manager, Brandon Lutane. Despite repeated incidents of aggressive and inappropriate conduct by these male employees, including interference with client accounts, threats, and hostile behavior, no corrective action was taken against them. Plaintiff and her team reported these violations, following proper protocols and notifying management of the discrimination and hostile work environment. Instead of holding the male employees accountable, Defendant retaliated against Plaintiff and the women on her team, culminating in their termination on a pretextual basis. This pattern demonstrates a discriminatory and retaliatory

1

practice in which male employees were allowed to violate rules with impunity, while female employees who reported misconduct were punished, creating a chilling and unlawful workplace culture.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under 42 U.S.C. § 1981. This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy as Plaintiff's federal claims.

2. The employment practices alleged to be unlawful were committed within the state of Illinois and within the jurisdiction of the United States District Court for the Northern District of Illinois.

## PARTIES

3. Plaintiff, Suha S. Hossain is a resident of Illinois.

4. At all relevant times, Defendant BMO Bank, N.A. (also referred to as "Defendant" or "BMO") has continuously been doing business in the State of Illinois and has continuously had at least fifteen (15) employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

6. At all relevant times, Defendant has been a covered entity under Title VII and IHRA.

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Suha S. Hossain filed a charge with the IDHR alleging violations of Title VII and IHRA by Defendant.

8. The IDHR issued to Defendant a Letter of Determination and a right to sue letter. **See Exhibit A**. Received by Plaintiff days later.

9. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

**Plaintiff's Background and Professional Experience**

10. Plaintiff, Suha S. Hossain, is a forty-one (41) year old female of South Asian descent, specifically of Pakistani and Indian heritage.

11. Plaintiff has more than nineteen (19) years of experience in the banking industry, including approximately seventeen (17) years in management and leadership roles.

12. Throughout her career, Plaintiff has consistently demonstrated strong leadership, communication skills, and intellectual aptitude, earning the trust and respect of senior leadership and colleagues alike.

**Employment with BMO Bank and Exemplary Performance**

13. Plaintiff began her employment with BMO Bank on or about August 8, 2011, where she spent approximately twelve and a half (12.5) years building an exceptional professional reputation.

14. During her tenure at BMO Bank, Plaintiff managed multiple successful branches, earned promotions, and consistently received high performance evaluations.

15. Plaintiff was never placed on a disciplinary plan, performance improvement plan, or any corrective action, and her human resources record remained spotless throughout her employment.

16. Plaintiff received national recognition for her sales performance and leadership abilities and was routinely entrusted with additional responsibilities by directors and senior leadership due to her proven competence and reliability.

17. Plaintiff was widely regarded as a highly intellectual and effective leader and was repeatedly selected to lead committees focused on employee engagement, skills development, and production growth.

18. Plaintiff's leadership contributed to increased productivity, improved customer experience, and the consistent achievement of performance targets.

19. In or around 2016, Plaintiff held the position of Regional Sales Manager in the Wisconsin market, further demonstrating her qualifications for advancement and her value to the organization.

20. Plaintiff cultivated strong and lasting relationships with both consumer and business clients, which directly contributed to increased production, enhanced customer satisfaction, and the overall success of the branches she managed.

21. Plaintiff took her role at BMO Bank seriously and served as a dedicated brand ambassador.

22. Plaintiff was proud of her employment with BMO Bank and reasonably expected to continue advancing her career with the organization, with the intention of remaining employed there long-term.

23. Despite Plaintiff's exemplary performance record, extensive experience, and loyalty to BMO Bank, in or around June 2024, Plaintiff's successful career took an unexpected and devastating turn, giving rise to the claims set forth in this Complaint.

**Notice of Hostile Work Environment and Management Inaction**

24. On or about January 18, 2024, an email was sent providing formal notice of an incident involving Premier Banker Eric Boutelle, documenting his hostile behavior toward Plaintiff and her team. The incident notice included compiled documentation detailing multiple occasions on which Eric created a hostile work environment for Plaintiff and her team.

25. Despite this notice, no corrective action was taken by Eric's direct manager, Brandon Lutane, Market President for Premier Banker. Instead, Brandon Lutane began engaging in harassing conduct toward Plaintiff by sending emails questioning her handling of client accounts and repeatedly asking why Eric was not involved, demonstrating greater concern for Eric's productivity than for the safety and well-being of Plaintiff and her team.

26. Plaintiff's Regional President, Chris Michalski, was aware of Eric's conduct and the hostile environment it created. However, he failed to notify Human Resources, failed to intervene, and allowed both Brandon Lutane and Eric to continue interfering with Plaintiff's clients and staff.

27. As senior executives, Brandon Lutane and Chris Michalski had a duty to immediately address these concerns and implement corrective measures to protect seven female employees from an unstable and aggressive male coworker. Instead, they permitted Eric to continue working in Plaintiff's branch and to continue interacting with Plaintiff's clients.

28. As a result of management's inaction, Plaintiff and her team experienced a period of significant distress, fear, and anxiety, frequently feeling unsafe and on edge whenever Eric was present in the branch.

**Prior Incidents Demonstrating Hostile and Aggressive Conduct**

May 2022 Incident

29. In May 2022, an incident arose involving a referral to Eric concerning a client bringing $400,000 in new money to the bank. At the time, Eric was on vacation, and Edward Daly was listed as the backup Premier Banker.

30. The client visited the branch on a Saturday, where Relationship Retail Banker (RRB) Diana discussed a Money Market Account with the client. The client requested a follow-up call on Monday. According to the client, no such call occurred.

31. Diana followed up and learned that Edward Daly had been instructed by Eric that Eric himself would contact the client. No outreach occurred, and the client subsequently moved their business to another bank after being contacted by a Premier Banker there.

32. Upon returning from vacation, Eric confronted Diana and repeatedly demanded that she meet with him in his office. Diana declined, expressing that she was upset about how the client situation had been handled and wished to move on.

33. Eric persisted, becoming increasingly aggressive in tone, which frightened Diana and compelled her to enter his office. Once inside, Eric closed the door, stood over her, and aggressively began yelling while defending his conduct.

34. Diana froze in fear, fled the office, and sought assistance from Alison, who attempted unsuccessfully to calm her. Diana remained visibly shaken.

35. Plaintiff, who was on vacation at the time, was contacted and immediately notified Market President Michael Rosean.

36. Plaintiff explained that this was not acceptable and was harassment that the female employees should not be forced to endure.

37. Michael Rosean only asked Eric to leave the branch for the remainder of the day to restore safety and reduce tension.

38. The Premier Market President at the time, Nicholette Cutrera, failed to address Eric's behavior and focused solely on referral procedures rather than the hostile conduct.

39. BMO continued to disregard employee safety.

July 2022 Incident

40. In July 2022, Diana was assisting a client in opening a $10,000 Certificate of Deposit (CD) and conducting a required financial conversation. The client agreed to proceed.

41. Eric emerged from his office, intervened, and redirected the client into his office. When Diana attempted to confirm the CD opening, the client stated that Eric advised it did not make sense.

42. As the client exited, Diana attempted to provide her business card, which the client refused, stating it was unnecessary.

43. Plaintiff addressed Eric regarding his improper interference and the need to allow appropriate introductions to Premier. This was a violation of BMO policies.

44. Michael Rosean and Nicholette Cutrera were informed of the incident and the continued harassment of female employees by Eric.

45. BMO did not take any action.

46. BMO did not investigate the incident upon information and belief.

November 2023 Incident

47. In November 2023, a customer contacted RRB Alison Dasso expressing interest in working with her. Alison returned the call, discussed CD renewal options, and successfully persuaded the client to move an additional $30,000 into the CD.

48. Eric learned of the scheduled appointment by breaching privacy policies of BMO.

49. After learning of the appointment Eric informed Alison via Teams that he would attend the meeting. When Alison requested his officer code to proceed with her portion of the transaction, Eric refused and stated he would take over the appointment again breaching BMO policies

50. Alison had been working with the client since October 2023, with documented notes. Eric had no documented notes until November 20, 2023.

51. Prior to the appointment, Eric entered the branch and aggressively confronted Alison, stating, "You don't understand, I will be opening that CD." Plaintiff was on vacation, and Michael Rosean was again notified.

52. BMO again knew of the hostile work environment and discrimination that female employees had to face by Eric and did nothing.

53. Eric was not investigated nor terminated.

December 2023 Incident

54. In December 2023, Heather had previously referred a client to Eric who was relocating from Connecticut to Illinois. On a Friday, the clients contacted both Eric and Heather seeking assistance.

55. Eric advised he was unavailable until the following week. Heather informed the clients she was available, and they visited the branch that day, where Heather assisted them with opening a CD.

8

56. Later that afternoon, Eric entered Plaintiff's office, shut the door, and aggressively stated there was a "huge problem." He hovered over Plaintiff's desk, raised his voice, and insisted Heather should not have assisted the clients.

57. Plaintiff explained that Heather appropriately helped the clients while Eric was unavailable. Eric remained visibly angry, causing Plaintiff to feel threatened and unsafe.

58. Plaintiff ended the discussion due to fear for herself and her team and immediately contacted Michael Rosean, who expressed concern but again BMO did nothing.

January 2024 Incident

59. In January 2024, Eric was absent during the Christmas period and the following week due to illness. No backup Premier Banker was assigned.

60. On January 8, Eric's client visited the branch regarding a matured CD and sought assistance from Diana.

61. Diana advised the client that Eric was unavailable and attempted to follow protocol.

62. The client became increasingly frustrated. Ultimately, while the client accessed her safe deposit box, Eric contacted her on her personal cell phone. The substance of that communication is unknown.

63. Eric sent Diana an all-caps message stating, "STOP THE CD! Pat is my client!" Diana felt intimidated.

64. Michael Rosean was again notified and again BMO did not do anything.

Post-Termination Policy Changes

65. After reporting the numerous instances of harassment against female employees, BMO commenced a retaliatory "investigation" against the female employees.

66. The investigation came shortly after the reporting.

67. BMO began an investigation that targeted the female employees that had dared to speak out.

68. The investigation was targeted.

69. The goal of the investigation was to punish the women who had spoken out against the BMO culture.

70. Following Plaintiff's termination, multiple bank policies and processes related to sales and servicing were altered.

71. Plaintiff's termination letter alleged falsification of AB referrals. Shortly thereafter, the entire AB Referral Program was eliminated.

72. In the first quarter of fiscal year 2025, Retail Head, Anthony Hudson, stated in an email that the AB Referral program was discontinued due to employee terminations, demonstrating systemic breakdowns rather than misconduct.

73. Additionally, the debit card instant issuance process referenced in Plaintiff's termination letter was later changed to allow ABs to initiate issuance through separate pin pads, further undermining the allegations made against Plaintiff.

74. BMO fired all women and anyone who spoke out for them.

## COUNT I – WRONGFUL TERMINATION (COMMON LAW / PUBLIC POLICY VIOLATION)

75. Plaintiff repeats and incorporates by reference the allegations contained above as if fully set forth herein.

76. Plaintiff was employed by Defendant for over twelve years and consistently demonstrated exemplary performance, integrity, and loyalty.

77. Plaintiff's termination was unjustified, pretextual, and contrary to Illinois public policy, as it was based on false allegations and retaliatory animus, rather than legitimate business reasons.

78. As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost wages, benefits, emotional distress, and other damages in an amount to be proven at trial.

### COUNT II – GENDER-BASED DISCRIMINATION (Ill. Human Rights Act, 775 ILCS 5/1-101 et seq.)

79. Plaintiff repeats and incorporates by reference the allegations contained above as if fully set forth herein.

80. Plaintiff is a female and a member of a protected class under the Illinois Human Rights Act.

81. Defendant, through its agents, including executives Brandon Lutane and Chris Michalski, treated Plaintiff less favorably than male colleagues, failed to protect Plaintiff from harassment, and allowed a male employee to create a hostile work environment, while prioritizing his interests over the safety, well-being, and careers of Plaintiff and other female employees.

82. Defendant's actions constitute gender-based discrimination in violation of the Illinois Human Rights Act.

83. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered lost wages, emotional distress, reputational harm, and other damages in an amount to be proven at trial.

### COUNT III – RETALIATION (Ill. Human Rights Act, 775 ILCS 5/6-101 et seq.)

84. Plaintiff repeats and incorporates by reference the allegations contained above as if fully set forth herein.

85. Plaintiff engaged in protected activity by reporting, in writing, the hostile and inappropriate conduct of Premier Banker Eric and by attempting to protect her team and clients from unsafe and unprofessional conduct.

86. Defendant, through its agents, including Brandon Lutane and Chris Michalski, subsequently retaliated against Plaintiff by failing to address the reported conduct, interfering with her work, and ultimately terminating her employment under false pretenses.

87. Defendant's actions constitute unlawful retaliation in violation of the Illinois Human Rights Act.

88. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered lost wages, benefits, emotional distress, and other damages in an amount to be proven at trial.

**COUNT IV – HOSTILE WORK ENVIRONMENT (Ill. Human Rights Act, 775 ILCS 5/1-101 et seq.)**

89. Plaintiff repeats and incorporates by reference the allegations contained above as if fully set forth herein.

90. Plaintiff was subjected to severe, pervasive, and unwelcome conduct based on gender, including intimidation, harassment, and threats by a male coworker, Eric, and a failure by management to intervene or protect Plaintiff and her team.

91. Defendant knew or should have known of the hostile conduct, yet failed to take prompt or effective remedial action.

92. The hostile environment unreasonably interfered with Plaintiff's ability to perform her job and created a work environment that was intimidating, offensive, and abusive.

93. Defendant's actions constitute a violation of the Illinois Human Rights Act, and Plaintiff is entitled to all available remedies, including but not limited to lost wages, reinstatement, compensatory and punitive damages, and attorneys' fees.

**COUNT V – RACIAL DISCRIMINATION (42 U.S.C. § 1981)**

94. Plaintiff repeats and incorporates by reference the allegations contained above as if fully set forth herein.

95. Plaintiff is a member of a protected racial and ethnic class, being of South Asian descent (Pakistani/Indian heritage).

96. Plaintiff entered into an employment relationship with Defendant, which constitutes a contractual relationship protected under 42 U.S.C. § 1981.

97. During her employment, Plaintiff was subjected to disparate treatment, harassment, and retaliation based on her race. Specifically, male employees of a different racial background were allowed to violate company policies, harass female employees, and interfere with branch operations without consequence, while Plaintiff and her all-female team were punished, disciplined, and ultimately terminated under pretextual reasons after reporting misconduct.

98. Defendant's actions interfered with Plaintiff's right to make and enforce contracts on the same terms and conditions as similarly situated employees of different races, in violation of 42 U.S.C. § 1981.

99. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, reputational harm, and other damages, in an amount to be proven at trial.

100. Defendant's conduct was willful, malicious, and in reckless disregard of Plaintiff's federally protected rights, entitling Plaintiff to punitive damages under 42 U.S.C. § 1981.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests the following relief:

    a.    All damages allowed under the claims as set forth above;
    b.    Compensatory damages for monetary and non-monetary loss;

c. Prejudgment interest;
d. Costs;
e. Punitive Damages
f. Attorney's fees; and
g. Such other relief as in law or equity may pertain.

**JURY TRIAL DEMAND**

Plaintiff requests a jury trial on all questions of fact raised by its complaint.

DATED: January 20, 2026                  Respectfully Submitted,


By       /s/ Frank Avila

Frank Avila
7132 N. Harlem Suite 107
Chicago, Illinois 60631
FrankAvilaLaw@GMail.com
773-671-3480